UNITED STATES of America, Appellant,

v.

Stanford SMITH a/k/a Willie Ellis Eveleigh, Defendant–Appellee.

No. 1104, Docket 92–1665.

United States Court of Appeals, Second Circuit.

Argued Feb. 16, 1993.

Decided Nov. 12, 1993.

Michael G. Rossetti, Asst. U.S. Atty., for W.D.N.Y., Buffalo, NY (Dennis C. Vacco, U.S. Atty., of counsel), for appellant.

James P. Harrington, Buffalo, NY, for defendant-appellee.

Before OAKES, ALTIMARI, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

The United States appeals from an order entered November 2, 1992 in the United States District Court for the Western District of New York, Richard J. Arcara, *Judge,* that adopted a report and recommendation of

Leslie G. Foschio, *Magistrate Judge.* The court granted defendant-appellee Stanford Smith's motion *in limine* to suppress the introduction into evidence at trial of narcotics and a handgun seized at an apartment pursuant to a search warrant. The government contends that the district court erred in determining that (1) probable cause did not exist to search the apartment, and (2) the search was not justified under the "good faith" exception to the exclusionary rule.

We agree, and reverse the order of the district court.

## Background

This appeal arises from a pretrial motion *in limine* following Smith's April 19, 1991 arrest and April 25, 1991 indictment. The five-count indictment charged Smith, alleged to be a native and subject of Guyana, with: (1) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1988); (2) using or carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (1988 & Supp. II 1990); (3) making false, fictitious and fraudulent statements regarding a matter within the jurisdiction of the Immigration and Naturalization Service in violation of 18 U.S.C. § 1001 (1988); (4) possessing a false identification document with intent to defraud the United States in violation of 18 U.S.C. § 1028(a)(4) (1988); and (5) unlawfully entering the United States after previously having been deported, in violation of 8 U.S.C. § 1326 (1988 & Supp. II 1990). Following the indictment, Smith moved to suppress the introduction into evidence of a quantity of cocaine base and a 9mm handgun seized by police officials upon the execution of a search warrant. Judge Arcara referred the suppression motion to Magistrate Judge Foschio for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (1988).

The facts giving rise to this appeal are as follows, and are not significantly disputed by the parties. Prior to March 1, 1991, a confidential informant (the "CI") who claimed to have information concerning the sale of narcotics in the City of Niagara Falls, New York approached William Evans, a narcotics offi-cer with five years experience in the Niagara County Sheriff's Department. Specifically, the CI asserted that at least two individuals whom the CI believed were Jamaicans from "out of town" were engaged in the sale of narcotics at apartment 201 (the "Apartment") of 413 13th Street, a small, run-down residential apartment building in Niagara Falls. The CI also advised Evans that weapons, as well as drugs, were possibly being sold at the Apartment. Evans had not previously employed the assistance of this CI. Rather, the CI had contacted local police authorities to offer assistance in apprehending persons selling narcotics in exchange for leniency regarding unrelated narcotics offenses then pending against him. The information provided by the CI was corroborated by Evans' supervisor; Evans did not know the source of the supervisor's intelligence.

On March 1, 1991, Evans met the CI at a location near the Apartment building. After informing Evans that he had recently transported persons to the Apartment building to purchase narcotics, the CI agreed to attempt a purchase of drugs at the Apartment under Evans' supervision. Evans then searched the CI for contraband and supplied him with $40 in "buy money" provided by the Niagara County Drug Task Force ("NCDTF"). Evans observed from a parked car as the CI entered the Apartment building. Approximately four or five minutes later, the CI emerged with a small plastic bag containing a chunk of material which field tested positive for the presence of cocaine. The CI informed Evans that he had purchased the cocaine from a man named "John" in the Apartment, and described "John" as a black Jamaican male approximately 5′5″ tall, of slight to medium build, with a beard and moustache. The CI further stated that another black male was also present in the Apartment, and that he did not know the first or last name of that man.

At a later date, Evans entered the apartment building to confirm that an apartment 201 did, in fact, exist. In addition, on two occasions between March 1 and April 19, 1991 the CI unsuccessfully attempted to purchase narcotics at the Apartment at the

prompting, and under the supervision, of Evans.

On April 19, 1991, however, after being informed by the CI that "John" had returned to Niagara Falls, Evans supplied the CI with NCDTF buy money, searched him for contraband, and waited outside as the CI entered the Apartment building. The CI emerged shortly thereafter with a small packet whose contents field tested positive for the presence of cocaine. On this occasion, the CI stated that "John" was present in the Apartment with a black female, and described "John's" height as 5'10". Evans did not directly observe, nor electronically surveill, the CI in the act of procuring the cocaine from "John" in the Apartment on either occasion when cocaine was purchased.

Immediately following the April 19 purchase of narcotics, Evans prepared an affidavit application for a search warrant on a prepared "fill in" form utilized by the NCDTF when a warrant is required expeditiously. He then arranged to meet that evening at approximately 11:00 p.m., accompanied by the CI, with Niagara City Court Judge Mark A. Violante at police headquarters in order to obtain a warrant to search the Apartment. The warrant application specified the Apartment by number and address, and requested authorization to search the entire Apartment for cocaine and other controlled substances, as well as documents or currency tending to show the source and buyers of the narcotics, the scope of the narcotics enterprise, and the identity of the persons controlling the Apartment. The application described the two individuals using the Apartment as "John LNU [last name unknown]" and "John Doe," an unknown person. It stated that: (1) Evans had received information from the CI that two Jamaican males periodically occupied the Apartment and sold cocaine there; (2) in March and April the CI had informed Evans that he had purchased narcotics from these individuals; and (3) the substances purchased on those occasions had tested positive for cocaine.

During the meeting at police headquarters, Evans reiterated to Judge Violante the substance of the information contained in the warrant application and affidavit regarding the circumstances of the two successful purchases of cocaine, the latter of which had occurred only about two hours earlier. Based on information provided to him by the CI, Evans also described to Judge Violante the layout of the Apartment (a one-room studio). The CI related the circumstances of the narcotics purchases to Judge Violante, stating that "John" and another black male were present at the March 1 purchase, and the same "John" and a black female were present at the April 19 purchase. Judge Violante took written notes while speaking with Evans and the CI, but he did not utilize a stenographer or tape recorder to record the discussion.

After hearing these statements and asking Evans if he had anything to add, Judge Violante authorized the warrant, which Evans and approximately fifteen to seventeen police officers immediately executed. Smith was arrested at the Apartment, and a search of the premises yielded, *inter alia*, the narcotics and handgun currently at issue. In light of the immigration and weapons charges detailed in the indictment, the United States Attorney for the Western District of New York took over Smith's prosecution.

At the suppression hearing before Magistrate Judge Foschio, Judge Violante testified that although he swore Evans prior to discussing the details surrounding the investigation of the Apartment, the CI was never sworn. Evans testified, however, that when he was sworn by Judge Violante, the CI also raised his hand and therefore was also sworn. Judge Violante further stated that he considered the proceedings before him to have been conducted in accordance with N.Y.Crim.Proc.Law § 690.40(1) (McKinney 1984) as he understood it, and in particular that Evans' affidavit applying for the search warrant satisfied the requirement of § 690.-40(1) that Evans' "examination ... be either recorded or summarized on the record by the court."

Judge Violante testified that the CI was not sworn "because I had no stenographer and I wasn't going to rely on him and I had no tape recorder." Judge Violante further testified that while he took into consideration the statements made by the CI, he made no

determination regarding the CI's credibility, and would have issued the warrant based solely upon Evans' affidavit and sworn testimony if the CI had not accompanied Evans to the warrant proceeding. The CI did not testify at the suppression hearing.

Magistrate Judge Foschio ruled that the evidence seized in executing the warrant must be suppressed because probable cause had not been established for issuance of the warrant. Specifically, the magistrate judge opined that because (1) Evans had not independently corroborated the CI's statements regarding the use of the Apartment by Jamaican males; (2) there was no evidence of the CI's previous reliability; (3) prior to the two cocaine purchases the CI had merely transported persons to the Apartment building and had not personally purchased narcotics there; and (4) Evans did not personally witness either of the cocaine purchases at the Apartment, and taking into account Judge Violante's failure to swear the CI or record his testimony, probable cause was not established by the "totality of the circumstances" test articulated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In addition, the magistrate judge concluded that the "good faith" exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was inapplicable for two reasons. First, Evans brought the CI to the meeting with Judge Violante with the specific purpose of using the CI's statements to cure any deficiencies in Evans' own affidavit and testimony, which Evans knew were insufficient, standing alone, to establish probable cause to search the Apartment. Second, it was not objectively reasonable for an officer of Evans' experience to be unaware that New York law requires that in cases where a witness is present and has conveyed information upon which a probable cause determination is based, the witness must be sworn and his testimony recorded.

On the government's motion for reconsideration before Magistrate Judge Foschio, and upon further reconsideration before the magistrate judge that was ordered by Judge Arcara in light of this court's intervening decision in *United States v. Moore*, 968 F.2d 216 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992), the magistrate judge adhered to his original determinations that probable cause was lacking and that the "good faith" exception to the exclusionary rule did not apply. Further, in denying the first motion to reconsider, Magistrate Judge Foschio held that suppression was appropriate for the additional reasons that the issuing judge was never informed of the two failed attempts by the CI and Evans to purchase narcotics at the Apartment, and that the lapse of almost seven weeks between the two successful purchases "raised a serious question of staleness." In ruling in Smith's favor on the second motion to reconsider, the magistrate judge distinguished *Moore* on a number of bases, including the fact that "the failure to swear the informant in the instant case was intentional and not an oversight."

In an order entered November 2, 1992, Judge Arcara adopted the report and recommendation of Magistrate Judge Foschio suppressing the narcotics and handgun seized from the Apartment. The government appeals from that order pursuant to 18 U.S.C. § 3731 (1988).

### Discussion

 The issues presented by this appeal are whether there was probable cause to issue the warrant to search the Apartment, and if not, whether suppression of the narcotics and handgun should nonetheless have been denied because of the *Leon* "good faith" exception to the exclusionary rule. On an appeal from a ruling on a motion to suppress, we review a district court's findings of historical fact for clear error, but analyze *de novo* the ultimate determination of such legal issues as probable cause and the good faith of police officials in relying upon a warrant. *See, e.g., Moore*, 968 F.2d at 221; *United States v. Uribe–Velasco*, 930 F.2d 1029, 1032 (2d Cir.1991). And when, as in this case, "the district court is itself a reviewing court, we owe its conclusions no particular deference." *United States v. Leake*, 998 F.2d 1359, 1362–63 (6th Cir.1993) (citations omitted).

Applying these standards to largely undisputed facts, we conclude that the magistrate

judge and the district judge erred (1) in determining that probable cause had not been established, and (2) in concluding that the police officials did not rely in good faith upon the warrant issued by Judge Violante. We address each issue in turn.

### A. *Probable Cause.*

■ The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Fed.R.Crim.P. 41. In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the "totality of the circumstances" bearing upon its reliability. *See Gates,* 462 U.S. at 230–31, 103 S.Ct. at 2328; *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991). As the Court observed in *Gates,* this approach envisions probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 232, 103 S.Ct. at 2329.

*Gates* articulated the standards for assessing probable cause in these terms:

> As early as *Locke v. United States,* [11 U.S. ( ] 7 Cranch [) ] 339, 348[, 3 L.Ed. 364] (1813), Chief Justice Marshall observed, in a closely related context: "[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation.... It imports a seizure made under circumstances which warrant suspicion." More recently, we said that "the *quanta* ... of proof" appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar [v. U.S.],* 338 U.S. [160], at 173 [69 S.Ct. 1302, 1309, 93 L.Ed. 1879]. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision.
>
> . . . .

> ... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S., at 271, 80 S.Ct. at 736.

*Gates,* 462 U.S. at 235, 238–39, 103 S.Ct. at 2330, 2332 (alterations in *Gates* ); *see also New York v. P.J. Video, Inc.,* 475 U.S. 868, 876, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986) (quoting *Gates,* 462 U.S. at 235, 238–39, 103 S.Ct. at 2330, 2332); *United States v. Harwood,* 998 F.2d 91, 96 (2d Cir.1993) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332); *United States v. Wagner,* 989 F.2d 69, 72 (2d Cir.1993) (citing *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331); *Rivera,* 928 F.2d at 602 (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332).

■ Further, "after-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)); *see also Leake,* 998 F.2d at 1363. In addition,

> courts should not invalidate [a] warrant by interpreting the [supporting] affidavit in a hypertechnical, rather than a common-sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States,* [362 U.S. 257, 270 [, 80 S.Ct. 725, 735, 4 L.Ed.2d 697] (1960) ].

*United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *see*

*also Rivera*, 928 F.2d at 602 (quoting *Ventresca*, 380 U.S. at 109, 85 S.Ct. at 746).

In the present case, the CI informed Evans that itinerant Jamaicans were selling narcotics at the Apartment, and that the CI had personally accompanied other persons to the Apartment building to purchase cocaine. Subsequently, on two occasions, Evans searched the CI, gave him buy money, and dispatched him to the Apartment building, from which he emerged within minutes in possession of cocaine. In both instances, the CI corroborated his allegations that the Apartment was used as a retail location for narcotics sales by describing in detail the Apartment, its occupants, and the purchase transactions. *See United States v. Elliott*, 893 F.2d 220, 223 (9th Cir.) ("A detailed eyewitness report of a crime is self-corroborating; it supplies its own indicia of reliability.") (citations omitted), *modified*, 904 F.2d 25 (9th Cir.), *cert. denied*, 498 U.S. 904, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990). In the interim between the two transactions, furthermore, Evans went through the Apartment building to confirm the existence of the Apartment at which the CI had reported the initial cocaine purchase to have occurred.

■ The affidavit used to apply for the warrant, coupled with Evans' sworn testimony, set forth these facts, which provided an adequate basis for Judge Violante's determination that probable cause existed to issue the warrant. It is certainly not fatal that Evans did not personally witness the cocaine purchases underlying the warrant, but instead relied on what the CI told him about the purchases. *See United States v. Parrish*, 925 F.2d 1293, 1296 (10th Cir.1991) (affidavit of officer applying for warrant need not allege personal knowledge of drug trafficking); *United States v. Smith*, 914 F.2d 565, 568 (4th Cir.1990) (upholding finding of probable cause when police official stated in affidavit that informant entered motel room with no cocaine in his possession and exited room

possessing cocaine), *cert. denied*, 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991); Fed.R.Crim.P. 41 ("The finding of probable cause may be based upon hearsay evidence in whole or in part."); *Gates*, 462 U.S. at 243–46, 103 S.Ct. at 2334–36 (anonymous letter, coupled with confirming surveillance, provided adequate basis for probable cause determination); *Alabama v. White*, 496 U.S. 325, 326–27, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990) (anonymous telephone tip, corroborated by surveillance, provided reasonable suspicion for investigative stop).

As has been observed in a similar case:

> [T]he fact that much of the information contained in [an] affidavit [is] not based on … first hand knowledge is not, in and of itself, material to the viability of that affidavit and the warrant. Furthermore, it is clear from *Gates* that reliance on a confidential informant is permissible in an affidavit submitted in support of a request for a search warrant. *Gates, supra,* 462 U.S. at 241–42, 103 S.Ct. at 2333–34 (*quoting Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). The only questions for the Court are whether the [affiant's] reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance of the search warrant.

*United States v. Brown*, 744 F.Supp. 558, 566 (S.D.N.Y.1990).

Smith contends that Judge Violante violated section 690.40(1) of the New York Criminal Procedure Law by taking unsworn testimony from the CI, and by failing to record that testimony.[1] We note in this regard that while the failure to administer the oath that we recently excused in *Moore* was inadvertent, *see* 968 F.2d at 223, Judge Violante deliberately refrained from swearing the CI.

---

1. Section 690.40(1) provides:

 In determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court.

N.Y.Crim.Proc.Law § 690.40(1) (McKinney 1984). Wholly aside from New York law, of course, the Fourth Amendment requires that warrants issue "upon probable cause, supported by Oath or affirmation," and the applicable federal rule calls for sworn testimony. *See* Fed. R.Crim.P. 41(c)(1), 41(c)(2)(A).

Judge Violante explicitly testified, however, that Evans' affidavit and testimony, both of which Evans provided under oath, furnished the basis for his probable cause determination. Our review of the facts and the applicable law sustains that conclusion. Accordingly, while not deprecating in any sense the importance of the oath that is required by the federal Constitution and rules of procedure, as well as by state law, to support the issuance of a warrant, we do not believe that the failure to swear the CI undermines the validity of the warrant issued in this case.

■ Smith also contends that the warrant violated New York law in a number of other respects. These arguments are unavailing, however, because the touchstone of a federal court's review of a state search warrant secured by local police officials and employed in a federal prosecution is the Fourth Amendment and its requirements, and no more. In *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987), this court explicitly held that "federal law should apply to ... federal criminal prosecution[s], even though the underlying investigation leading to prosecution was conducted solely by state officials." We ruled that because the search at issue satisfied the requirements of federal law, there was no need to determine whether the search violated the Vermont constitution. *Id.; see also Preston v. United States*, 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers."); *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960) ("The test is one of federal law, neither enlarged by what one state may have countenanced, nor diminished by what another may have colorably suppressed.").

Magistrate Judge Foschio cited as additional grounds for suppression (1) Evans' failure to inform Judge Violante that the CI failed on two occasions to successfully purchase cocaine, and (2) the "staleness" resulting from the lapse of seven weeks between the two cocaine purchases. We disagree.

■ An otherwise sufficient application for a search warrant need not relate unproductive or unsuccessful efforts in the course of the investigation. *See United States v. Watts*, 848 F.2d 134, 137 (9th Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988); *United States v. Sugar*, 606 F.Supp. 1134, 1150–51 (S.D.N.Y.1985). As to "staleness," as we stated in *Rivera*: "In investigations of ongoing narcotics operations, we have held that, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." 928 F.2d at 602 (collecting cases). In the instant case, Judge Violante issued the warrant within hours of the second purchase, hardly a delay conducive to a finding of staleness. *Cf. United States v. Allen*, 960 F.2d 1055, 1057 (D.C.Cir.) (per curiam) (no staleness when warrant issued within seventy-two hours of controlled purchase), *cert. denied*, —— U.S. ——, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992).

■ Finally, we are unpersuaded by Smith's contentions that probable cause is undermined because the CI described Smith as 5'5" tall after the first purchase, and 5'10" after the second purchase, or because the CI described Smith as a Jamaican (based upon his accent) when he is in fact a native of Guayana. The rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events. *United States v. Merchant Diamond Group, Inc.*, 565 F.2d 252, 253 (2d Cir.1977) (per curiam) (collecting cases); *see also United States v. Barnes*, 604 F.2d 121, 152 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). There is no claim that the CI deliberately lied about these matters, and it cannot plausibly be contended that these minor errors or inconsistencies undermine the existence of probable cause. *See Moore*, 968 F.2d at 222 ("False information voids a warrant only if the information was necessary to the finding of probable cause.") (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978)).

In sum, the warrant issued in this case was based upon a valid determination of probable cause. This conclusion suffices for reversal, but in the interest of completeness, we also address the applicability of the "good faith" exception to the exclusionary rule.

**B. *"Good Faith" Exception.***

 As articulated by *Leon*, the "good faith" exception to the exclusionary rule allows the admission of evidence, despite the absence of probable cause, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. at 920, 104 S.Ct. at 3419 (footnote omitted); *see also Moore*, 968 F.2d at 222 ("The test of objective good faith is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'") (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23). The exception, however, will not apply when, *inter alia*, the warrant application "is so lacking in indicia of probable cause as to render reliance upon it unreasonable." *Moore*, 968 F.2d at 222 (citing *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420).

In the instant case, the magistrate judge concluded that "Evans knew that the affidavit presented to the judge was lacking in probable cause and, therefore, he brought the informant in so that the informant could testify as to his personal knowledge of the facts contained within the affidavit." Magistrate Judge Foschio also discredited Evans' testimony that Evans thought the CI had been sworn simultaneously with Evans, opined that "[a]n officer with five years experience such as Evans must have been aware that any statements relied on by a judge in issuing a warrant must be sworn," and similarly concluded that Evans must have been aware of the requirements of Crim.Proc.Law § 690.40(1), especially in view of "recent declarations of the state's highest court strictly construing [these] requirements." The magistrate judge cited in this regard *People v. Taylor*, 73 N.Y.2d 683, 543 N.Y.S.2d 357, 541 N.E.2d 386 (1989).

 We disagree. Even if we accepted the magistrate judge's conclusion that Evans'

affidavit and sworn testimony did not suffice to establish probable cause, we would not accept the assessment that this was so clear that Evans must have brought the CI before Judge Violante on that understanding. *Cf. United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) (officer could rely upon warrant when affidavit " 'provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause'") (quoting *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422). Nor can we accept the determination that Evans must have known more about the requirements of § 690.40(1) as to sworn testimony than did Judge Violante, and the implicit assumption that Evans should have had adequate confidence in his superior knowledge to instruct Judge Violante on the subject.

 We next consider the recording requirement of § 690.40(1), the only aspect of the statute considered by *Taylor*. *Taylor* addressed a considerably weaker case for the prosecution than is presented here. In *Taylor*, the issuing magistrate had lost his notes of the hearing, and remembered nothing about it until prompted by the notes of the police officer who sought the affidavit. *See* 73 N.Y.2d at 687, 543 N.Y.S.2d at 358, 541 N.E.2d at 387. Even on these facts, the Court of Appeals ruled only 4–3, over a vigorous dissent (73 N.Y.2d at 691–96, 543 N.Y.S.2d at 361–63, 541 N.E.2d at 390–92), that the recordation requirement of § 690.40(1) had not been satisfied. We do not see how Evans, or for that matter anyone, could be charged with knowledge that in view of *Taylor*, the recordation requirements of § 690.40(1) had not been met in this case.

We accordingly disagree both with the particular grounds upon which the magistrate judge rejected the *Leon* exception in this case, and with the resulting conclusion that Evans did not execute the warrant in objective good faith. Evans had verified the existence of the Apartment, and on two occasions, one only hours before he sought the warrant, had searched the CI, provided him with buy money, and dispatched him to the Apartment building, from which he emerged moments later with cocaine and a detailed description of its purchase. Thus, even on

the tenuous assumption that the warrant was not supported by probable cause, Evans was justified in relying upon Judge Violante's determination to issue it. *Leon* therefore precludes suppression of the evidence seized when the warrant was executed.

### Conclusion

The suppression order of the district court is reversed.

OAKES, Senior Circuit Judge, concurring:

I concur in that portion of the opinion dealing with the "good faith" exception to the exclusionary rule.