**UNITED STATES of America**

v.

**Joseph T. BRYGODZINSKI.**

Crim. No. 95–CR–48–1.

United States District Court,
D. Vermont.

Oct. 5, 1995.

Gary G. Shattuck, U.S. Attorney's Office, Rutland, VT, for plaintiff.

Cindy E. Hill, Middlebury, VT, for defendant.

*RULING ON AMENDED MOTION TO SUPPRESS AND FOR FRANKS HEARING* (paper 17)

MURTHA, Chief Judge.

Defendant Joseph Brygodzinski has been indicted on one charge of counterfeiting United States currency in violation of 18 U.S.C. § 472. The defendant has moved to suppress evidence seized from his apartment on January 23, 1995. The two grounds for his motion are: (1) The search warrant secured by the Rutland police was invalid on its face and not supported by probable cause; and, (2) someone had entered his apartment

prior to the January 23 search and that individual possibly planted the seized evidence.[1] For the reasons set forth below, the Amended Motion to Suppress is DENIED.

## I. Background

On September 15, 1995, this Court held a hearing on the defendant's Amended Motion to Suppress and on the related issue of whether the defendant is entitled to a further hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Based upon the record before the Court and the testimony and arguments proffered at the hearing, the Court finds the following facts.

### A.

On the morning of January 21, 1995, Rutland Police Detective David Schauwacker was investigating a reported kidnapping and aggravated sexual assault. Information provided by the alleged victim led Detective Schauwacker to the defendant's apartment at 35 Elm Street in Rutland.

The defendant consented to allow Schauwacker to conduct a search of his apartment. Schauwacker's search only took 10–15 minutes. At that time, the search was limited to a "walk-through" of the apartment to view the layout of the apartment and to retrieve evidence related to the assault. The defendant voluntarily went to his closet and handed police specific items of clothing they requested.

Other officers who processed evidence at the scene do not specifically recall seeing any trunk on the premises. However, they did not look in the defendant's closet, nor did they exhaustively search the apartment for items other than those specifically related to the reported sexual assault.

Around midnight, police arrested the defendant and locked the apartment. The police assert that no officer returned to the defendant's apartment until January 23, 1995.

### B.

On the morning of January 23, 1995, Rutland City Police Detective Corporal Detective Kevin Geno arrested James Johnson as he attempted to pass a counterfeit $20 bill at the Rutland Burger King restaurant. When asked where he got the counterfeit money, Johnson first falsely stated that he got the money from an ATM located at a nearby bank.

While in custody, Johnson gave police permission to search his apartment on North Main Street. When they conducted that search, police found several counterfeit $20 bills in a cabinet in the hallway outside the kitchen. In addition, police contacted the Bank where Johnson claimed to have withdrawn money and learned that the Bank used procedures for detecting counterfeit bills prior to placing money in its ATMs.

When confronted with results of the search and the fact that the Bank checks all bills before putting them in an ATM, Johnson admitted he had obtained the bills from an individual named Scott Whitney. Whitney, in turn, told Johnson that he had obtained the bills from the defendant, who kept them in a trunk in his closet.

Detective Geno had not been involved in Schauwacker's investigation of the sexual assault, nor had he ever spoke with Schauwacker concerning his investigation or search of Brygodzinki's apartment. Therefore, Detective Geno first learned of the defendant's alleged involvement in counterfeiting as a result of Mr. Johnson's admissions. Johnson further confessed that he had passed some counterfeit bills in Brandon the day before, a fact which Brandon police corroborated. Based on this information, Detective Geno obtained a state search warrant for the defendant's apartment.

During this second search of Brygodinski's apartment, the police found counterfeit $20 bills, paper and other materials relating to counterfeiting in a closet. At the time, the

---

**1.** At the hearing held on September 15, 1995, the defendant, through counsel, indicated that he was withdrawing any arguments relating to suppression of statements he may have made to

police and that he was only pursuing his claim that physical evidence seized from his apartment is subject to suppression.

defendant was still in custody as a result of his arrest on sexual assault charges. This second search was conducted sometime after 9:00 p.m., over two days after Detective Schauwacker had conducted his search of the apartment.

Between the two searches, it appears .that someone may have entered and ransacked the Brygodzinski apartment. In a subsequent conversation with the defendant's mother, Detective Schauwacker learned that the defendant may have encouraged someone to enter his apartment and destroy evidence between the time of the first search and the second. However, there is no credible evidence which suggests that the Rutland Police either knew of or were involved in the apparent entry and ransacking of the defendant's apartment.

## II. Discussion

The defendant claims that evidence seized pursuant to Detective Geno's January 23 search warrant must be suppressed because Geno's warrant affidavit contained statements which he knew were false. The alleged untruthful statements are contained in paragraph 8 of the search warrant affidavit, which states in relevant part:

In this document, Johnson advised that he [had] been at a party at Scott Whitney's DOB 08/19/71, apartment located at 35 Elm Street in Rutland City. Said party was on 01/14/95. While there, Scott Whitney asked Johnson if he had $500.00 as he, Whitney, could give him $2500.00. Johnson told Whitney that he only had 40.00 and gave this money to Whitney who then left the apartment, leaving the door open, and then entered the subject's apartment who lives across the hall, Joseph Brygodzinski. Brygodzinski had been at Whitney's party and had left the party, returning to his apartment across the hall. Johnson then viewed Whitney open a trunk and retrieve a stack of money and gave same to Johnson. Johnson stated that this trunk was full of money.

Under *Franks v. Delaware,*

[t]here is ... a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentia-

ry hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.... The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. at 171–72, 98 S.Ct. at 2684.

■ In the instant case, the defendant has not met his burden of demonstrating by a preponderance of the evidence that he is entitled to a further hearing under *Franks* or that the items seized from his apartment must be suppressed. *See id.* at 156, 98 S.Ct. at 2676–77. To the extent that the defendant is arguing that the police informant provided inaccurate information, that fact, in and of itself, does not make the search warrant invalid. "The rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events." *See United States v. Smith,* 9 F.3d 1007, 1014 (2d Cir.1993).

■ In addition, the defendant has presented no evidence that Detective Geno lied in recounting information which Johnson provided. Moreover, before acting, police verified Johnson's information by searching his apartment and calling Brandon police to see if counterfeit bills had in fact been passed in that area. Accordingly, the defendant has not demonstrated that Geno displayed a reckless disregard for the truth when securing the warrant to search the defendant's apartment. *See United States v. McAllister,* 18 F.3d 1412, 1417 (7th Cir.1994) ("A *Franks* violation occurs only if the affiant knew the

third party was lying, or if the affiant proceeded in reckless disregard of the truth.")

■ The defendant also relies on the fact that Johnson originally was not truthful when detained at Burger King. It is commonplace for suspect to lie when first confronted by police. The fact that Johnson originally lied when questioned does not invalidate the search warrant which was secured on the basis of Johnson's later, corroborated statement. Any discrepancies between Detective Geno's or Johnson's description of the defendant's apartment and its actual layout are relatively minor, and, in any event, do not suggest that Detective Geno, who had never been to the defendant's apartment, intentionally relied upon information he knew to be false.

Here, the affidavit provided the state judge with background information about the investigation. It described the corroborated statement that Johnson had passed counterfeit money in Brandon. The affidavit provided the state judge with sufficient information to support a finding of probable cause for issuance of the warrant. *See United States v. Hager*, 969 F.2d 883, 887 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992).

■ Finally, the defendant's claim that evidence was planted in the defendant's apartment is accompanied by little more than unsupported speculation. While such a claim may provide a basis for a defense at trial, in this case, it does not require this Court to find the search warrant was unsupported by probable cause.

#### Conclusion

The Amended Motion to Suppress is DENIED.

SO ORDERED.