**UNITED STATES of America,
Appellee,**

v.

**W. Lyman JENKINS, Defendant–
Appellant.**

**No. 00–1773.**

United States Court of Appeals,
Second Circuit.

July 18, 2001.

Mark A. Kaplan, Jarvis & Kaplan, Burlington, VT, for appellant.

Paul J. Van der Graaf, Assistant United States Attorney, Burlington, VT; David V. Kirby, United States Attorney, and Tristram J. Coffin, Assistant United States Attorney, on the brief, for appellee.

Present MINER, LEVAL, Circuit Judges, and RAKOFF,* District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

In the early 1980s, defendant-appellant W. Lyman Jenkins, a chemist, developed a process for making granulated maple sugar from maple syrup in cooperation with

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

Domino Sugar Co. Over the course of the next several years, Jenkins developed a business relationship with American Maple Products ("AMP") to assist him in manufacturing maple sugar. Although Jenkins's ended his relationship with AMP in March 1993, he continued his business of producing maple sugar, representing to his customers that they were purchasing pure maple sugar when in fact the sugar was not primarily maple-based. During the mid 1990s, Jenkins developed a line of cake and cookie mixes that were marketed through a company he founded called Vermont Country Maple Mixes Inc. ("VCMMI"). The mixes contained adulterated sugar, although Jenkins represented that they contained pure maple sugar. In 1994, Jenkins sold half of this business to Joan Savoy and Thomas Anderson, and then sold the other half to them in 1995. Savoy and Anderson operated VCMMI with the close involvement of Jenkins, who provided all of the maple sugar used for the mixes, representing the sugar as pure maple. In 1996, Savoy and Anderson, suspecting that Jenkins was providing them with less than pure maple sugar, sent a sample of Jenkins' product to a forensic laboratory in Texas for testing. The analysis revealed that the samples contained cane sugar, not pure maple sugar. Similarly, the Vermont Country Store ("VCS"), another of Jenkins' customers, sent a sample of Jenkins' sugar to be tested in France. The laboratory there found that Jenkins' product contained cane sugar rather than pure maple sugar.

Some time later, the Vermont Department of Agriculture began an administrative investigation of Jenkins. In January 1997, the State of Vermont obtained an administrative search warrant for Jenkins' business office and residence in Jericho, Vermont. The warrant was based on the Vermont regulators' belief that Jenkins had violated 6 V.S.A. §§ 490(b) and 493, which prohibit, *inter alia,* labeling a prod-

uct " 'maple syrup,' or 'maple sugar,' however modified," if the product does not meet Vermont's strict definition of those terms. The warrant was issued on January 21, 1999 by a Vermont Superior Court Judge based on the lengthy affidavit of Bruce Martell, an employee of the Vermont Department of Agriculture. Martell's affidavit indicated that he had spoken with Savoy and Phil Minix, a representative of VCS, both of whom reported the results of the laboratory tests and provided Martell with the results of those tests. Martell also averred that in November 1996, he had spoken with Bruce Bascom, a licensed Vermont maple syrup dealer who had done a fair amount of business with Jenkins, and learned that Bascom had not sold any maple syrup to Jenkins since February 1995. Following the execution of the warrant by Vermont authorities, the items seized were turned over to federal investigators.

Jenkins was indicted by a federal grand jury in April 1999. The indictment charged Jenkins with seven counts of mail fraud, in violation of 18 U.S.C. § 1341, six counts of adulterating a food product with the intent to defraud, in violation of 21 U.S.C. § 331(a), two counts of wire fraud, in violation of 18 U.S.C. § 1343, one count of bank fraud, in violation of 18 U.S.C. § 1344, one count of making false statements to a federally-insured bank, in violation of 18 U.S.C. § 1014, and three counts of knowingly filing a false tax return, in violation of 26 U.S.C. § 7206. Prior to his trial, Jenkins moved to suppress the evidence seized by Vermont authorities in the administrative search conducted in 1997 and urged the district court to hold a hearing on the suppression issue pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The district court denied Jenkins' motion without holding an evidentiary hearing, and evidence obtained from the search was

admitted at trial. Following a ten day trial, Jenkins was convicted on all counts. On appeal, Jenkins makes three arguments.

First, Jenkins claims that there was no probable cause to believe that his residence would contain evidence that he had violated either 6 V.S.A. § 493 or 6 V.S.A. § 490(b) because Martell's affidavit failed to set forth sufficient facts to support such a finding. We review *de novo* a district court's denial of a motion to suppress evidence based on lack of probable cause. *See, e.g., United States v. Smith,* 9 F.3d 1007, 1011 (2d Cir.1993). In deciding whether probable cause exists for a search warrant, a judge must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[O]nly the probability, *and not a prima facie showing,* of criminal activity is the standard of probable cause." *Id.* at 235, 103 S.Ct. 2317 (internal quotation marks and citation omitted) (emphasis added). Despite Jenkins' allegations that Martell's affidavit was deficient, probable cause existed to justify the warrant issued in this case. Martell's affidavit recounted his conversations with Savoy, who reported that Jenkins had sold her what he represented to be pure maple sugar. When tested, the product was revealed to be cane sugar. Martell also averred to nearly identical discussions with Minx. The allegations of Savoy and Minx, coupled with the results from the testing laboratories, were sufficient on their own to establish probable cause.

Jenkins next argues that the district court's refusal to hold a hearing based on his allegations that Martell omitted material information from his warrant affidavit violated the rule announced in *Franks.* In *Franks,* the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, *and if the allegedly false statement is necessary to the finding of probable cause,* the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155–56, 98 S.Ct. 2674 (emphasis added). "Intentional or reckless omissions of material information, like false statements, may serve as the basis for a *Franks* challenge." *Rivera v. United States,* 928 F.2d 592, 604 (2d Cir.1991). Furthermore, "[r]ecklessness may be inferred where the omitted information was clearly critical to the probable cause determination." *Id.* (internal quotation marks omitted). Based on our review, none of the omitted information to which Jenkins points was critical to the probable cause determination. Moreover, Minx's statement was sufficient to establish a fair probability that Jenkins was violating Vermont's maple laws and that there would be evidence of such wrongdoing at his residence. Accordingly, we conclude that it was not error for the district court to refuse to hold a *Franks* hearing.

Finally, Jenkins asserts that the warrant issued in this case was overly broad, allowing Vermont authorities to seize items unrelated to the warrant affidavit's alleged violations of 6 V.S.A. §§ 490(b) and 493. Specifically, Jenkins contends that the warrant improperly allowed the seizure of "any records … that pertained to how much maple sugar and/or syrup [Jenkins] was buying, or how much maple [Jenkins] was selling and to whom." The Fourth Amendment requires that warrants "particularly describ[e] … the person or things to be seized," U.S. Const. amend. IV, thereby prohibiting a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,*

403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). However, Jenkins' records of purchases and sales were proper objects of the warrant and the warrant was not overly broad in regard to these items. The seizure of these records was necessary in order to ascertain if Jenkins was selling cane sugar to customers who thought they were buying pure maple sugar. We therefore reject Jenkins' challenge to the breadth of the search warrant.

We have considered all other arguments raised by Jenkins on appeal and find them to be without merit. For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.