18-1468 (L)
*United States v. Seaway, Lamere*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand twenty.

PRESENT:    PETER W. HALL,
            RICHARD J. SULLIVAN,
            JOSEPH F. BIANCO,
                    *Circuit Judges*.
_____

United States of America,

                *Appellee*,

                v.                                          18-1468; 18-1916; 18-2795

Tammy M. Martin,
                *Defendant*,

Clif J. Seaway, Tammy J. Lamere,

                *Defendants-Appellants*.
_____

For Appellant Seaway: Melissa A. Tuohey, Assistant Federal Public Defender *for* Lisa A. Peebles, Federal Public Defender, Syracuse, New York.

For Appellant Lamere: ROBERT G. WELLS, Syracuse, New York.

For Appellee: CARINA H. SHOENBERGER, Thomas R. Sutcliffe, Lisa M. Fletcher, Assistant United States Attorneys *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, New York.

Appeal from judgments of the United States District Court for the Northern District of New York (Mordue, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Clif Seaway and Tammy Lamere appeal from judgments of the United States District Court for the Northern District of New York (Mordue, *J.*) entered on May 3, 2018 and June 18, 2018, respectively. We assume the parties' familiarity with the underlying facts, the record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

I.

Defendant-Appellant Clif Seaway was convicted following a jury trial of two

2

counts of Conspiracy to Sexually Exploit a Child and ten counts of Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e). The district court principally sentenced Seaway to thirty years' imprisonment on each count, to run consecutively, for a total term of three hundred and sixty years' imprisonment. Seaway argues that the district court erred in denying his motion to suppress evidence seized pursuant to a search warrant which he asserts was unsupported by probable cause.

Defendant-Appellant Tammy Lamere was convicted following a guilty plea of one count of Conspiracy to Sexually Exploit a Child and one count of Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e). The district court sentenced Lamere to thirty years' imprisonment on each count, to run concurrently, followed by fifteen years of supervised release. Lamere argues on appeal that the district court improperly applied a four-level enhancement, applicable where a child pornography offense involves material portraying sadistic or masochistic conduct, to her Sentencing Guidelines calculation. Lamere further contends that her sentence is substantively unreasonable.

## II.

"On an appeal from a ruling on a motion to suppress, we review a district

3

court's findings of historical fact for clear error, but analyze *de novo* the ultimate determination of such legal issues as probable cause and the good faith of police officials in relying upon a warrant." *United States v. Smith*, 9 F.3d 1007, 1011 (2d Cir. 1993). Here, we owe no particular deference to the district court's conclusions, and in reviewing whether there was probable cause for a search warrant our task "is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed," *id.*, 9 F.3d at 1012 (internal quotation marks, alterations, and citations omitted). "A[n issuing judge's] determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks and citation omitted).

"We review a sentence for procedural and substantive reasonableness, which is akin to a 'deferential abuse-of-discretion standard.'" *United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015) (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008)).

### III.

The search warrant authorizing a search of Seaway's property was issued based on information provided by Seaway's nephew, William Raymond III, while Raymond was incarcerated for crimes relating to his sexual conduct with a minor.

4

In Raymond's statement attached to the warrant application, he explained that he observed images and videos of child pornography on Seaway's computer while residing at Seaway's house in August through September of 2015. The statement, which was given during a face-to-face meeting with an investigator, went into detail about (among other things): the circumstances surrounding Seaway showing Raymond the pornography, the content of the photos and videos, how Raymond knew the age of the children in the photos, the color of the hard drive on which Seaway stores his child pornography, Seaway's password to his computer, Seaway's address, and the fact that Seaway had a light blue school bus behind his trailer used for storage. Raymond also disclosed that, while he was living with Seaway, Raymond "had a girlfriend at the time who was 13 years old" and that this was the reason he was "locked up here at the jail." Seaway App. 66.

A few days after Raymond made this statement, investigating police inquired about Seaway's criminal history and discovered that he had been arrested for acting "in manner [sic] to injure child [sic] less than 17," Seaway App. 63, and had been the subject of an investigation into alleged sexual abuse of a prepubescent minor. The police also verified the address Raymond gave as Seaway's residence and confirmed that Seaway still was associated with that

5

address. Based on an application setting forth these facts, a county judge issued a search warrant authorizing a search of Seaway's home and property (including the bus) approximately one month after Raymond made his statement. A few days later, police executed the warrant and seized evidence used to support Seaway's indictments.

Seaway argues that Raymond's statements did not bear sufficient indicia of reliability because nothing in the investigator's affidavit attached to the warrant application or in Raymond's attached statement gave reason for the issuing judge to believe that Raymond was reliable or telling the truth. Seaway takes particular issue with the fact that the full extent of Raymond's criminal history was undisclosed in the warrant application and supporting materials and further suggests that Raymond may have had a motive to lie to receive leniency on pending criminal charges.

When determining whether there is probable cause to support a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or

6

evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Though we need not defer to the district court's conclusion in this case, we accord "great deference" to the issuing judge's determination of probable cause, *id*. at 236, and are instructed to resolve "doubtful or marginal cases" in harmony with the "preference to be accorded to warrants," *Smith*, 9 F.3d at 1012 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

Given the totality of the circumstances and considering the deference we give to the issuing judge, the district court was correct to deny the motion to suppress. It is true that "a criminal informer is less reliable than an innocent bystander with no apparent motive to falsify," *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (internal quotation mark and citation omitted), so Raymond's reliability may be undermined by the fact that he was incarcerated at the time of his interview. But we have also explained that "a face-to-face informant must . . . be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false." *Id.* (internal quotation marks, alterations, and citation omitted). While Raymond's reliability may be undermined by his criminality, it is bolstered

7

by his face-to-face interview and the fact that he had an incentive to tell the truth lest he "be held accountable." *Id.*

Raymond's reliability is further supported by the fact that he "testified under threat of the criminal sanction for perjury," and that his eye-witness report of the crime was incredibly detailed. *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996); *see also id.* ("We think that such a detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability." (internal quotation mark, alteration, and citations omitted)). His statement set forth in detail his basis for knowing about the collection of child pornography on Seaway's computer, how and where the collection was stored, and what kinds of photographs and videos Raymond directly observed. The fact that Raymond had a criminal history not fully detailed in the warrant application or its attachments does not erase these strong indications of reliability. This is particularly true given that Raymond's recent crimes – the nature of which were referenced in his statement – do not bear on his honesty and, in fact, could help explain why Seaway showed Raymond the pictures and videos in the first instance.

Viewing the circumstances as a whole, it is clear that the issuing judge had a "substantial basis" to conclude there was probable cause to search Seaway's

property. The district court did not err in denying Seaway's motion to suppress the evidence gathered as a result of the search warrant.

IV.

Lamere argues on appeal that the sentencing court improperly applied a four-level enhancement when it adopted the Guidelines calculation set forth in the Presentence Investigation Report ("PSR"). Defense counsel did not object to the PSR's Guidelines calculations, which included this enhancement, either in Lamere's sentencing memorandum before the district court or at the sentencing hearing. Lamere's challenge to the calculation of the Guidelines is therefore reviewed under a plain error standard. *See, e.g.*, *McCrimon*, 788 F.3d at 78 (failure to object to purported mistake in Guidelines calculation is reviewed for plain error).

To demonstrate plain error, Lamere must show that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United*

*States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks, alterations, and citation omitted).

The enhancement at issue applies where "the offense involved material that portrays . . . sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.1(b)(4). "We have . . . explained that this enhancement will apply where (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused pain to the minor." *United States v. Bleau*, 930 F.3d 35, 40 (2d Cir. 2019) (internal quotation marks and citation omitted). Both physical and mental pain suffice to trigger the enhancement, and the analysis of whether a depiction is "sadistic" under the enhancement is an objective one. *Id.* An objective inquiry directs the district court to "determine only whether an outside viewer, as he is watching, would perceive the depicted activity as causing physical or mental pain to the minor during the course of the activity." *Id.* at 41.

The PSR explains that it applied the enhancement because of the depictions of Lamere digitally penetrating the victim's vagina and because of Lamere's involvement in producing a video of the victim performing oral sex on Seaway. We have upheld the application of the enhancement to situations where a

prepubescent child has been penetrated with a foreign object. *See, e.g.*, *United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996) (finding no error in district court's determination that enhancement for sadistic depictions applied where photograph showed young boy being penetrated by unidentified object). It was not a "clear or obvious" error, *Marcus*, 560 U.S. at 262, if it was error at all, for the district court to find that the material portrayed was sadistic. It was therefore not plain error for the district court to apply the enhancement.

V.

Lamere next argues that her sentence was substantively unreasonable and greater than necessary to accomplish the goals of sentencing. Lamere suggests that because of her intellectual disabilities, she is less morally culpable than her sentence reflects and that her thirty-year sentence is effectively a sentence of life in prison because of her health problems.

"Upon review for substantive unreasonableness, we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v. Brown*, 843 F.3d 74, 80 (2d Cir. 2016) (internal quotation marks and citation omitted). In giving this due deference, we "provide relief only

11

in the proverbial 'rare case.'" *United States v. Bonilla*, 618 F.3d 102, 109 (2d Cir. 2010) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime," and "[w]e will . . . set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 188, 188-89 (internal quotation marks and citation omitted).

Lamere's unfortunate personal circumstances do not render her sentence substantively unreasonable. At sentencing, the district court indicated that it thoroughly considered Lamere's background and characteristics when imposing the sentence. In sentencing Lamere to the statutory maximum of thirty years on each count to run concurrently, the district court explained that it was doing so in part because of Lamere's repeated victimization of the minor victim over a period of years. Notably, while the district court imposed the maximum sentences for each conviction, it did not sentence Lamere to consecutive terms of imprisonment, which thereby would have imposed the maximum available sentence of sixty years. As the district court explained, the sentence "reflects the seriousness of

[Lamere's] offense and provides just punishment for [her] conduct, while promoting respect for the law, and avoiding unwarranted sentencing disparities." Lamere App. 85.

It is also worth noting that we have upheld much longer sentences for the production of child pornography. In fact, we have explained that a sixty-year sentence, which may result in a *de facto* life sentence, "is within the realm of punishments that this Court has upheld as reasonable for production of child pornography." *Brown*, 843 F.3d at 83. Given the heinous facts of this case and given that we have upheld as reasonable much longer sentences for similar conduct, we cannot say that the district court abused its discretion in imposing Lamere's sentence.

* * *

We have considered Appellants' remaining arguments and find them to be without merit. We hereby **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13