UNITED STATES of America, Appellant,

v.

Gerard WAGNER, Defendant,

Michael Canale; Tammie Canale; Thomas Brewer; Donald Howard; Shawna O'Leary; Leo Talback; Arthur Villa and David Keays, Defendants–Appellees.

No. 97, Docket 92–1173.

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1992.

Decided March 12, 1993.

Paul D. Silver, Asst. U.S. Atty. for the N.D.N.Y. (Gary L. Sharpe, U.S. Atty. for the N.D.N.Y., of counsel), for appellant.

Michael A. Feit (Ellen C. Brotman, Feit & Schlenker, Albany, NY, of counsel), for defendant-appellee Michael Canale.

Joseph R. Brennan (McPhillips, Fitzgerald & Meyer, Glens Falls, NY, of counsel), for defendant-appellee Shawna O'Leary.

Before MINER, ALTIMARI, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

This is an interlocutory appeal by the United States, pursuant to 18 U.S.C. §§ 2518(10)(b) and 3731, of an order of the United States District Court for the Northern District of New York (Con. G. Cholakis, *Judge*) dated January 23, 1992, suppressing the fruits of a wiretap on the telephone of Defendant Michael Canale (hereinafter "Canale") and a search of Defendant Shawna O'Leary's home.

On April 8, 1991, Judge Cholakis authorized the wiretap pursuant to 18 U.S.C. § 2518. The O'Leary search warrant was issued by United States Magistrate Ralph W. Smith, Jr. on May 3, 1991. The various defendants were indicted on October 9, 1991 for possession and distribution of marijuana and for conspiracy to do the same in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment also charged Canale with possession and use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

In his January 23, 1992 suppression order, Judge Cholakis concluded that the affidavit in support of the application for authorization of interception of wire communications (the "Wiretap Affidavit") was not supported by probable cause, and that the affidavit submitted with the application for the search warrant (the "Search Warrant Affidavit") failed to establish probable cause and was stale. The government, in its appeal from this order, maintains that the two affidavits did establish probable cause, that the search warrant was not stale, and that officers conducting the search and the agents executing the wiretap acted in good faith reliance on the search warrant and the authorization of the wiretap. We denied an earlier motion by the defendants to dismiss the appeal. *See Canale v. United States,* 969 F.2d 13 (2d Cir.1992).

While we uphold the suppression of evidence seized in the search of O'Leary's home, we reverse the suppression of evidence derived from the wiretap.

A. *The Canale Wiretap Application*

On April 8, 1991, Judge Cholakis signed an order that he would later contradict authorizing the interception of wire communications on Canale's telephone pursuant to 18 U.S.C. § 2518(3).

Title 18, United States Code, Section 2518(3)(a-d), requires that before issuing an order for interception of wire communications, the judge must determine, based on the facts in the affidavit, that there is probable cause to believe that a crime has been, is being, or is about to be committed; probable cause to believe that communications about the crime will be obtained through the wiretap; that alternative means have been tried and failed or appear too dangerous or unlikely to succeed; and probable cause that the premises to be wiretapped are being used for criminal purposes or are used or owned by the target of the wiretap.

The test for determining probable cause under 18 U.S.C. § 2518 is the same as that for a search warrant. *United States v. Rowell,* 903 F.2d 899, 901–02 (2d Cir.1990); *United States v. Fury,* 554 F.2d 522, 530 (2d Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court set forth a "totality-of-the-circumstances" test for determining proba-

ble cause to support a search warrant. The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. at 2332. The quanta of proof necessary to establish probable cause is "only the probability, and not a prima facie showing, of criminal activity...." Id. at 235, 103 S.Ct. at 2330 (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)).

■ A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. United States v. Nichols, 912 F.2d 598, 602 (2d Cir.1990) (search warrant); United States v. Travisano, 724 F.2d 341, 345 (2d Cir.1983) (search warrant). The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause. Gates, 462 U.S. at 236, 103 S.Ct. at 2331; United States v. Nersesian, 824 F.2d 1294, 1306 (2d Cir.) (wiretap authorization), cert. denied, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). In this case Judge Cholakis authorized the wiretap as based upon probable cause. After the agents had executed the wiretap, secure in the knowledge that their search and seizure of communications had been judicially approved, the district judge reversed himself and found probable cause lacking. In these circumstances, it is Judge Cholakis's April 8, 1991 order authorizing the wiretap upon which the agents acted in apparent good faith, and not Judge Cholakis's order suppressing the fruits of the wiretap on January 23, 1992, which we believe to be entitled to deference. It was in issuing the first order and not the second that he was acting as an issuing judicial officer to whom deference is owed.

The wiretap application was supported by an affidavit of Special Agent Robert K. Sears of the Drug Enforcement Administration (the "DEA"), in which Agent Sears stated that the DEA was conducting a joint investigation, with the Warren County Sheriff's Department and the New York State Police, of a marijuana distribution ring controlled by Canale. The affidavit stated that beginning on June 19, 1990, a confidential informant (the "CI"), who had not worked previously with law enforcement officials, told Agent Sears that he had known Canale for approximately 20 years, during which time he had sporadically purchased small, "user" quantities of marijuana from Canale. Prior to becoming an informant, the CI was in Canale's home at various times from December, 1989 to March, 1990 doing construction work in a room in the basement. On several occasions, the CI saw large quantities of marijuana, and smaller quantities of cocaine, in Canale's house. Sometime around December, 1989 or January, 1990, the CI helped break up a one-hundred-pound package of marijuana in the house and was paid a small quantity of marijuana and cocaine for his work on the house. After beginning to cooperate with the government in June, the CI continued to observe drugs in Canale's home. In January, 1991, Canale gave the CI $700 to buy one quarter pound of marijuana from Michael Stewart, saying that his supply was low. Following the instructions of Agent Sears, the CI returned the $700 to Canale.

The affidavit also stated that, under the supervision of the agents and officers conducting the investigation, from December, 1990 to February, 1991, the CI made six separate purchases of marijuana and cocaine from members of the alleged Canale conspiracy other than Canale. On February 19 and 25, also under law enforcement supervision, the CI bought marijuana from a person not believed to be a member of the conspiracy alleged.

■ The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable

information, or if it is corroborated in material respects by independent evidence. If a substantial amount of information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that he provides, though uncorroborated, is also reliable.

■ In this case our focus is entirely upon the reliability of the information provided by the CI, since without that information, probable cause is lacking. An inquiry into the reliability of an informant's information is usually of two general types, not necessarily mutually exclusive: an inquiry into an informant's veracity and an inquiry into the quality of his sources of knowledge of the information. By quality of sources we mean the degree to which his information is based on reliable means, such as first-hand observations or second-hand information from reliable sources, rather than on unreliable means such as rumor or innuendo. Our inquiry here is of the first type, a focus on the veracity of the CI, since if the CI was telling the truth to Agent Sears, then probable cause to believe that criminal activity was being conducted in Canale's home is easily established in light of the fact that the CI described numerous occasions on which he personally witnessed, and even participated in, drug distribution-related activities in the Canale home.

■ While information provided by an informant from whom the government has received consistently reliable information in the past is likely to be sufficiently reliable to establish probable cause, *Gates* instructs that it is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy. 462 U.S. at 237–38, 103 S.Ct. at 2331–32 (holding that a tip from an anonymous informant can be a basis for a finding of probable cause). Even where an informant has no proven record, if an informant's declaration is corroborated in material respects, the entire account may be credited, including parts without corroboration. *See generally id.*

■ The CI's account of the various activities he witnessed inside Canale's home was properly credited by Judge Cholakis when he issued the wiretap authorization. Corroboration of information the CI gave the officers was amply provided by the fact that the CI made six supervised purchases of marijuana and cocaine from members of the alleged conspiracy, and two drug purchases from another suspect. An informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause. *See United States v. Adams,* 759 F.2d 1099, 1114 (3d Cir.), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985); *United States v. Sandoval,* 550 F.2d 427, 430 (9th Cir.1976), *cert. denied,* 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977).

Applying the common sense, totality-of-the-circumstances test set forth in *Gates,* it was reasonable for the issuing judge to conclude that the CI's information as set forth in the affidavit was truthful. While there is always a possibility that an informant has concocted his story while pretending to cooperate in order to harass an innocent or curry favor with the police, our common sense tells us that in circumstances such as those presented in this case, where the CI cooperated with the government for nine months and made eight drug purchases under government supervision, it is far more likely than not that such deception was absent.

■ Apart from the corroborating drug purchases, the veracity of the CI's story has additional support. The affidavit stated that Canale was previously convicted of a New York state charge of Criminal Possession of Marijuana in the First Degree, but that conviction was overturned under New York's Speedy Trial Act. Prior convictions are a relevant consideration in determining probable cause. *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir.1990); *see also Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) ("that petitioner was a known user of narcotics made the charge against him much less subject to scepticism

[sic] than would be such a charge against one without such a history"). That the prior conviction was overturned on technical grounds does not affect its probity as to probable cause. *Cf. United States v. Nolan,* 551 F.2d 266, 272–73 (10th Cir.) (prior British conviction is valid consideration in determining probable cause despite fact that defendant did not receive *Miranda* warnings), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). Also, pen register data indicating calls between Canale and others said by the CI to be members of the alleged conspiracy corroborated the CI's information. *See ,United States v. Zucco,* 694 F.2d 44, 47 (2d Cir.1982); *see also Gates,* 462 U.S. at 243–45, 103 S.Ct. at 2334–35. Although the CI did not make a government-supervised drug purchase from Canale himself, the affidavit stated that he made three such purchases from David Keays, who the CI said was a member of the conspiracy. The pen register showed twenty-five calls between Canale and Keays over the period February 5 to April 1, 1991. The pen register data has added significance in light of the CI's statement that on one occasion at Keays's house he overheard Keays speaking on the telephone with Canale about a large marijuana shipment. The purchases from Keays, the CI's information about the Keays–Canale conversation, and the corroborating pen register data constitute reliable information that Canale was a knowing participant in a marijuana distribution network.

■ The CI's account, as corroborated, established probable cause to believe crimes were being committed, and that these crimes were occurring in Canale's home, satisfying the first and fourth prongs of 18 U.S.C. § 2518(3). The second prong, whether the affidavit establishes probable cause that the wiretap will intercept evidence of crime, is met by the pen register data showing frequent calls between those who the CI stated were members of the conspiracy, as well as the CI's statement that Canale's practice was to have his distributors call him before coming to his house to pick up the marijuana. In light of these facts, the affidavit easily established that it was more likely than not that evidence of the conspiracy would be obtained by intercepting calls on the telephone at Canale's residence.

■ The affidavit also satisfied the requirement that it establish that other investigative techniques have been tried and failed or appear too dangerous or unlikely to succeed. The affidavit cited the rural location of the house and the presence of dogs on the property as making surveillance difficult. It also recited that the CI had not been able to determine the source of supply and method of delivery of marijuana to Canale. Finally, the affidavit stated that the government did not think that it could infiltrate the organization with one or more undercover agents.

In sum, we find ample support for Judge Cholakis's April 8, 1991 authorization to intercept wire communications at Canale's home. It was error for Judge Cholakis to suppress the fruits of the wiretap in his January 23, 1992 order and, accordingly, we reverse.

### B. *The O'Leary Search Warrant*

Our view of the alleged probable cause to search O'Leary's home is quite different. The district court concluded that the affidavit in support of that search was insufficient to establish probable cause. We agree.

The affidavit stated that the CI purchased a small quantity of marijuana consisting of four "nickel bags" from O'Leary on March 19, 1991 in her home, that the transaction was tape recorded, and that O'Leary "stated in substance" that she had obtained the marijuana from Canale. Six weeks later, on May 3, 1991, the search warrant was issued and the search was physically conducted six days after that. The district court was of the view that by this time the affidavit was stale. We agree with the district court that, while the affidavit might barely have supported a search that was more or less contemporaneous with the CI's drug purchase, the six-week delay placed the information in the affidavit below the probable cause threshold.

While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past. *Compare Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932) (undercover alcohol purchase at hotel twenty-one days prior to application for warrant too remote in time), *with United States v. Beltempo*, 675 F.2d 472, 476–79 (2d Cir.) (search warrant not stale when object sought was trace sample of heroin observed spilled on rug fifty-two days prior to issuance of warrant), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982). Facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence. *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985); *United States v. Barlin*, 686 F.2d 81, 87–88 (2d Cir.1982). Therefore, if O'Leary were in any way linked to the ongoing conspiracy, the warrant would not have been stale. *See United States v. Rowell*, 903 F.2d 899, 903 (2d Cir.1990) ("[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness") (quoting *United States v. Feola*, 651 F.Supp. 1068, 1090 (S.D.N.Y.1987), *aff'd mem.*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989)).

The government argues that the O'Leary Search Warrant Affidavit, which incorporates most of the information set forth in the Wiretap Affidavit, linked O'Leary to the ongoing conspiracy, and thus permitted the inference that there was an ongoing presence of drugs in O'Leary's home. While the Search Warrant Affidavit stated that Canale owned O'Leary's home, it offered no clue as to the source of the affiant's knowledge. Moreover, while the Search Warrant Affidavit recited most of the facts in the Wiretap Affidavit, the Search Warrant Affidavit was devoid of any mention of O'Leary in connection with the conspiracy. There was not even a statement that the CI told the affiant that O'Leary was part of the distribution network. Furthermore, the pen register information recited in the Search Warrant Affidavit does not implicate O'Leary.

Thus, the evidence supporting the O'Leary search boiled down to this: a single, small purchase of marijuana from O'Leary in her home more than six weeks before the search, the fact that O'Leary made a "recorded" statement to the CI "in substance" that Canale was her source for that marijuana, and the unsubstantiated assertion by the affiant that O'Leary's home was owned by Canale. On these facts, we cannot ascribe to O'Leary a membership in Canale's ongoing conspiracy such as would defeat O'Leary's claim of staleness with respect to a warrant issued six weeks after the single marijuana purchase.

Matters might be different if the affidavit had been more carefully drawn. Perhaps the affidavit could have told us exactly what O'Leary said, since this conversation was said to be recorded. The affidavit might also have proffered the basis for the affiant's conclusion that Canale owned O'Leary's home. Of course, any further reliable information tending to show that O'Leary was an ongoing member of Canale's alleged drug distribution ring rather than a one-time seller acting on her own could have met the staleness objection.

Because the Search Warrant Affidavit does not establish the likelihood that there was an ongoing drug-selling operation in O'Leary's home, we cannot conclude that the district court erred in finding no probable cause at the time the warrant was issued and the search conducted.

Finally, the government argues that the officer conducting the search of O'Leary's home relied in good faith on the warrant issued by the magistrate and therefore under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the evidence may not be excluded. While this argument is persuasive, we are

precluded from considering it since the government first raised the issue in a Motion for Reconsideration of the district court's January 23, 1992 suppression order that was untimely filed on February 24, 1992. Local Rule 10(m) of the United States District Court for the Northern District of New York requires Motions for Reconsideration to be filed within 10 days of the judgment or order appealed from. Since the Motion for Reconsideration was untimely, the *Leon* issue was never properly raised before the district court and we may not consider it.

■ The general rule is that a reviewing court will not consider claims not presented before the district court. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir.), *cert. denied*, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). Reviewing courts may depart from this general rule "only when necessary to avoid manifest injustice." *Schmidt v. Polish People's Republic*, 742 F.2d 67, 70 (2d Cir. 1984). No such injustice has been demonstrated by the government. A claim of good faith reliance on the search warrant was ascertainable to the government at the time of the suppression hearing and the government has proffered no cause for not raising it at that time. We affirm the order of the District Court suppressing the fruits of the search of O'Leary's home.

### CONCLUSION

The order of Judge Cholakis of January 23, 1992, is reversed insofar as it suppressed the fruits of the wiretap of Canale's telephone authorized by the April 8, 1991 order, but affirmed insofar as it suppressed the fruits of the search of O'Leary's home on May 9, 1991 pursuant to the May 3, 1991 search warrant. The fruits of the O'Leary search are suppressed only as against O'Leary, since she is the only defendant who raised the issue before the district court and presumably was the only defendant with standing to do so.

Affirmed in part and reversed in part and remanded.