**UNITED STATES of America,**

v.

**Steven LAUFER, Defendant.**

**No. 02–CR–121E.**

United States District Court,
W.D. New York.

Feb. 10, 2003.

504

**505**

Michael A. Battle, United States Attorney, Paul J. Campana, Assistant United States Attorney, of Counsel, Buffalo, for Government.

Dubin, Sommerstein & Hunter, LLP, Robert B. Sommerstein, of Counsel, Buffalo, for Defendant.

ORDER

ELFVIN, Senior District Judge.

The Honorable Leslie G. Foschio, a Magistrate Judge in this judicial district,

having considered all pre-trial matters that a Magistrate Judge may hear and determine pursuant to this Court's referral under 28 U.S.C. § 636(b)(1)(A), and having on January 7, 2003 filed his Report and Recommendation concerning such, and no objection thereto having been made, and the substance and rationale of said Report and Recommendation having been considered by this Court, it is hereby

*ORDERED* that said Report and Recommendation is fully confirmed and that defendant's motion to suppress is denied and that parties are to appear before this Court on the 11th day of April, 2003 at 1:00 p.m. (or as soon thereafter as this matter may be heard) to set a date for trial.

### REPORT and RECOMMENDATION

#### *JURISDICTION*

This case was referred to the undersigned for all pretrial proceedings by Honorable John T. Elfvin on August 7, 2002. The matter is presently before the court on Defendant's pretrial omnibus motion filed October 16, 2002 (Doc. No. 14).

#### *BACKGROUND and FACTS*

Defendant Steven Laufer is charged in an indictment returned on July 11, 2002 ("the Indictment"), with a single violation of 18 U.S.C. § 2252(a)(4)(B), possession of child pornography. In connection with the underlying investigation leading to the Indictment, the undersigned, on October 25, 2001, issued a search warrant ("the search warrant"), authorizing the search of Defendant's residence located at 4805 Transit Road, Apartment 1804, Depew, New York. The search warrant application was supported by the affidavit of Federal Bureau of Investigation ("FBI") Special Agent Steven Forrest ("Agent Forrest") ("Agent Forrest's Affidavit"). On October 26,

2001, Defendant's residence was searched pursuant to the search warrant and certain items were seized, including Defendant's computer and hard drive—which was determined to contain contraband child pornography images—and other items. Defendant was arrested on October 30, 2001 and released on bail on October 31, 2001. When plea negotiations failed, the matter was presented to a grand jury which returned the Indictment on July 11, 2002.

On October 16, 2002, Defendant filed a pretrial omnibus motion (Doc. No. 14), seeking particularization, suppression of evidence, and various discovery. The motion is supported by the attached Affirmation of Robert B. Sommerstein, Esq. ("Sommerstein Affirmation"). The Government filed its response on October 24, 2002 (Doc. No. 15) ("Government's Response"). Oral argument on the motion was conducted on November 7, 2002, at which time all of Defendant's requests for nondispositive relief were resolved and decision was reserved on only Defendant's request to suppress evidence.

Following oral argument the Government filed, on November 22, 2002, a Supplemental Response (Doc. No. 17) ("Government's Supplemental Response"), and Defendant filed, on November 27, 2002, a Response to Government's Supplemental Response to Defendant's Pretrial Motion Regarding Suppression of Evidence (Doc. No. 18) ("Defendant's Response to Government's Supplemental Response"). Based on the following, Defendant's motion to suppress evidence should be DENIED.

### DISCUSSION

Defendant asserts that the search warrant issued for his residence was not based on probable cause. Sommerstein Affirmation, ¶ 13. In particular, Defendant maintains that Agent Forrest's Affidavit contains conclusory allegations and hearsay statements, and although alleging that Defendant subscribed to a pornography website, there are no factual allegations that Defendant actually possessed any child pornography. *Id.* ¶¶ 8–10. Defendant further asserts that the evidence seized from his residence "may be virtual images of children engaged in sex or of youthful-looking adults posing as minors and which depictions are neither produced by exploiting actual children nor necessarily meet the Court's definition of child pornography or obscenity." *Id.* ¶ 14. The Government argues in opposition that Agent Forrest's Affidavit sufficiently established probable cause for the search warrant and, alternatively, the search of Defendant's residence was valid pursuant to the investigating agents' reasonable reliance on the warrant such that the warrant was executed in accordance with the "good faith" exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Government's Response at 7–11.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) the Supreme Court established the "totality of the circumstances" test for the determination of probable cause under the Fourth Amendment with regard to a search warrant. The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates, supra,* at 238, 103 S.Ct. 2317 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). The quantum of proof necessary to establish probable cause is "only the probability, and not a *prima facie* showing, of criminal activity

...." *Gates, supra* (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision .... The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir.1993) (citing *Gates, supra*, at 238–39, 103 S.Ct. 2317) (alterations in original).

■ A finding of probable cause may be based, in whole or in part, on hearsay from a reliable informant. *Gates, supra*, at 243–46, 103 S.Ct. 2317; *Smith, supra*, at 1013. An inquiry into the reliability of an informant is usually of two general types: (1) an inquiry into the informant's veracity, and (2) an inquiry into the quality of the informant's source of knowledge, such as whether the information is based on first hand observations, as opposed to rumor or innuendo. *United States v. Wagner*, 989 F.2d 69, 72–73 (2d Cir.1993). In assessing a probable cause determination, "[t]he only questions for the Court are whether the [affiant's] reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance" of the warrant. *Smith, supra*. Finally, a judge's determination of probable cause should be given great deference by a reviewing court,

*Gates, supra*, at 236, 103 S.Ct. 2317; *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir.1990), and resolution of marginal cases should be determined by the preference afforded to warrants. *Jones, supra*, at 270, 80 S.Ct. 725.

■ In the instant case, Agent Forrest supplies ample detail in his affidavit to establish probable cause for the search warrant. In particular, Agent Forrest explains how an FBI investigation determined that Defendant subscribed to the most complete plan offered by an Internet website that provided access to child pornography, charging the subscription to Defendant's credit card account.

Agent Forrest explains that in July 2001, Special Agent Douglas Hunt of the Los Angeles Division of the FBI ("Agent Hunt"), who conducted an investigation into the Internet website "netnews_3" ("the website"), determined that the website offered for sale "explicit images of hardcore sex with minors under the age of 14." Agent Forrest's Affidavit ¶ 3(b). Such images were available for purchase with a credit card and "Paycom.net", an e-commerce transaction company located in Marina Del Ray, California ("Paycom") processed such financial transactions. *Id.*

Agent Hunt used a computer to accessed the website on July 2, 2001 and a notice replete with references as to how to obtain access to child pornography was displayed.[1] Agent Forrest's Affidavit ¶ 4. The notice specified that the website contained hard core child sex including, "for the most part [ ] movies which have been banned" and which could be accessed only by subscribers to the website's "Platinum Plan." *Id.* The notice also warned potential website subscribers who were offended by hard core child sex not to choose the

1. The relevant portion of the notice is quoted at ¶ 4 of Agent Forrest's Affidavit.

Platinum Plan. *Id.* Agent Hunt also observed that the website contained information on how website subscribers could avoid detection by law enforcement and, thus, also avoid prosecution for using the Internet and a computer to download (access and store to the subscriber's computer's hard drive) child pornography through use of the "Lightning 3 Newsreader Browser" ("the browser"), which was available to all website subscribers. *Id.* ¶¶ 4–5. According to the notice, "the 'Platinum CD,' containing images of children engaged in sex acts" would be mailed to an address of the subscriber's choice after subscribing to the website's Platinum Plan for two months. *Id.* ¶ 5.

On July 2, 2001, Agent Hunt used a credit card to open a Platinum Plan account with the website, providing his name, credit card number and billing address, telephone number, an e-mail address for receiving purchase confirmation and username and password for his subscription. Agent Forrest's Affidavit ¶ 7. After receiving from Paycom a purchase confirmation for a one month Platinum Plan membership with Netnews 3, a user name and password, Hunt contacted Paycom which confirmed it processed credit card transactions for the website and that it kept records of all such transactions. *Id.* ¶¶ 8–9.

On July 12, 2001, Agent Hunt accessed the website through his Platinum Plan account, first downloading the browser and then selecting the "Picture of the Day" which contained ten images of children engaged in sexually explicit conduct. Agent Forrest's Affidavit ¶ 10(a)-(b). Agent Hunt also downloaded other files accessible only to Platinum Plan subscribers and containing additional child pornography images, many of which were accompanied by warnings that the material may offend some people. *Id.* ¶ 10(c)-(e).

Agent Hunt determined that the internet provider address for the website was registered to Net News 3, 142 Newman Ave., Jefferson, Louisiana 70121, and that one James Brock ("Brock") of Scharf de Mexico, S.A. de C.V., San Jeronimo Num. 595, Mexico City, DF 01090, Mexico, was the administrative billing contact for Net News 3. Agent Forrest's Affidavit ¶ 6. On July 16, 2001, Agent Hunt learned from Special Agent Barbara O'Donnell of the New Orleans Division of the FBI ("Agent O'Donnell") that the FBI had been investigating Brock for distributing child pornography. *Id.* ¶ 14(a). Agent O'Donnell advised Agent Hunt that Brock's associate, Tony Huffman ("Huffman"), informed the FBI that he had designed a pornographic website called NETNEWS3 for Brock for which Brock sold memberships and that Brock obtained his child pornography collection from the Internet. *Id.* ¶ 14(b)-(c). Huffman further stated that Brock downloaded and copied pornographic images from various newsgroups on the Internet, copying the images onto CDs which were then mailed to the website subscribers. *Id.* ¶ 14(d). The CDs were encrypted and could be unlocked only with a 26 character password which Brock e-mailed to subscribers after they received their CDs. *Id.* ¶ 14(d). Huffman had the opportunity to observe the monitor of Brock's computer as Brock copied files to the CD and saw an image of child pornography being copied to the CD. *Id.* ¶ 14(e). Huffman also overheard Brock state he had mailed at least 50 of these CDs to customers. *Id.* ¶ 14(f).

On July 31, 2001, Brock was arrested and charged with distribution of child pornography and the FBI executed search warrants for Brock's residence as well as for the residence of his mother, Carmen Scharfenstien. Agent Forrest's Affidavit ¶¶ 24–26(a). Evidence seized pursuant to the search warrants included several com-

puters, customer lists, blank CDs, mailing materials for CDs, checks from Paycom and documents regarding Scharf De Mexico. *Id.* ¶ 26(a). Following his arrest, Brock agreed to speak with the FBI, admitting that he ran and controlled the website "netnews3," spending 16 hours a day monitoring and controlling it, and that the website offered three different membership plans including silver, gold and platinum. *Id.* ¶ 26(b). Brock stated he tailored the entire website for sale to individuals with an interest in children, that subscribers to the Platinum Plan had the greatest access and that Brock mailed to the Platinum Plan subscribers a quarterly CD containing movies of children engaged in sexual activity. *Id.* ¶ 26(c)-(f). Brock used Paycom's billing services. *Id.* ¶ 26(k). Brock admitted knowledge there were pictures of children under the age of 13 on the website and that he had gathered some of the pictures from other Internet newsgroups, placing them into the banned archives or folders for subscribers to view on the website. *Id.* ¶ 26(*l* ).

Agent Hunt advised Agent Forrest that through use of a Federal Grand Jury Subpoena on Paycom, Agent Hunt was provided with information that Defendant's credit card was billed for a Platinum Plan subscription to the website for the months of February, March and April 2001, that Defendant listed his e-mail address as *"airfortress@aol.com"* and his credit card billing address as P.O. Box 371, West Seneca, New York 14224. Agent Forrest's Affidavit ¶¶ 21–29. An administrative subpoena served on American On-line ("AOL") on August 2, 2001, seeking all subscriber information in Defendant's name, revealed that Defendant maintained an AOL e-mail account using the screen name "airfortress," through telephone numbers (716) 608–7032 and (716) 674–2570. *Id.* ¶ 30. According to the Haines Criss/Cross Telephone Directory (2000),

telephone number (716) 674–2570 is listed to Fast Auto Glass as 10 Lein Road, West Seneca, New York, a business of which Defendant is part owner. *Id.* ¶¶ 31, 35. An administrative subpoena served on Verizon on October 2, 2001, revealed that telephone number (716) 608–7032 is subscribed to by Defendant at his residence at 4805 Transit Road, Apartment 1804, Depew, New York. *Id.* ¶ 32. On October 1, 2001, United States Postal Inspector Paul Blum advised Agent Forrest that P.O. Box 371, West Seneca, New York was first listed to Defendant on October 30, 1990 and that Defendant continued to maintain the P.O. Box. *Id.* ¶ 33. Postal Inspector Blum advised Agent Forrest on October 11, 2001 that Defendant currently received mail at 4805 Transit Road, Apartment # 1804, Depew, New York. *Id.* ¶ 34.

Agent Forrest further averred that the complex nature of the website suggests that only those with a serious interest in child pornography would become subscribers and, accordingly, that evidence of credit card transactions used to purchase access to child pornography and child pornography would be found at the residences of subscribers to the website, including Defendant. Agent Forrest's Affdidavit ¶ 36(a). In particular, Agent Forrest explains that unlike other websites offering child pornography, the title of the netnews_3 website does not suggest its illicit content, leading Agent Forrest to believe that information about the website is publicized elsewhere on the Internet or among individuals with a dedicated interest in children, rather than to individuals who are merely curious. *Id.* ¶ 36(b). For example, upon locating the website, the viewer must direct the computer several times to proceed, in the face of warnings and statements that hardcore images of child pornography would be received. *Id.* ¶ 36(b). The

viewer must also select a payment plan which promises to provide access to varying degrees of child pornography. *Id.* ¶ 36(c). Defendant subscribed to the website's Platinum Plan which promised the greatest access to child pornographic images, provided a valid credit card for billing, and a valid e-mail address to receive billing confirmation, a user name and password. *Id.* ¶ 36(d). Defendant thus was entitled to download the browser which would have enabled him to view images of child pornography. *Id.* Moreover, as Platinum Plan members were able to download "zipped" files, which require an addition step to "unzip" and view the images, any unzipped images would reside on such member's computer's hard drive, requiring a significant amount of storage space which was likely to be found only on a computer in a member's home. *Id.* ¶ 36(e). Agent Forrest thus concluded evidence of possession of child pornography would be located at Defendant's home. *Id.* Agent Forrest also details the technical method by which Defendant allegedly obtained possession of the child pornography material that is the subject of the Indictment, including how such material is placed onto the Internet and how it thereafter becomes accessible to persons with access to the Internet and a computer. Agent Forrest's Affidavit ¶¶ 37–45.

The court finds Agent Forrest's Affidavit amply demonstrates probable cause to believe that evidence of child pornography would be located at Defendant's residence. Defendant's contention that Agent Forrest makes no allegations that Defendant actually took the necessary further steps to download child pornographic material from the website to his computer's hard drive, such that the search warrant issued based only on "pure speculation, conjecture and guess" as to whether Defendant participat-

ed in the charged criminality, is without merit. As stated, the probable cause necessary for a search warrant is "only the probability, and not a *prima facie* showing, of criminal activity." *Gates, supra* at 238, 103 S.Ct. 2317 (quoting *Spinelli, supra,* at 419, 89 S.Ct. 584).

Here, Defendant's actions in making three consecutive monthly payments for the Platinum Plan subscription for access to the website are consistent with the conclusion that it is probable that Defendant thereafter accessed the Internet website and proceeded to download images which meet the legal definition of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The precautions and warnings associated with such access, taking a commonsense view of the facts, strongly imply that the accessed material was unlawful; otherwise the precautions and warnings as described in the affidavit would have been unnecessary as lawful conduct does not require such clandestine commercial arrangements. Further, because Defendant subscribed to the website for three months, he would have been entitled to receive the quarterly CD containing child pornography as advertised in the notice that was first displayed when Agent Hunt first accessed the website. *See* Agent Forrest's Affidavit ¶ 5.

As to Defendant's assertion that much of the information contained in Agent Forrest's Affidavit is hearsay, the court observes that a significant portion of such information was provided by other FBI Agents involved in investigating the distribution of child pornography. Moreover, it is well established that hearsay information may be considered by a judicial officer in assessing probable cause. *Gates, supra,* at 238, 103 S.Ct. 2317; *United States v. Canfield,* 212 F.3d 713, 718 (2d Cir.2000). Accordingly, the court does not question the 'veracity' and 'basis of knowledge' of

such persons supplying hearsay information absent some reason by Defendant to do so. *See Smith, supra,* at 1012. At base, Defendant's argument raises questions for trial, *i.e.,* whether the information related in support of the search warrant constitutes proof beyond a reasonable doubt. On this record, the court finds that Defendant's motion to suppress evidence seized from his residence on the basis that the search warrant was issued without probable cause should be DENIED.

 Alternatively, Defendant's motion to suppress must be denied under the good faith exception to the exclusionary rule established by *Leon, supra,* which renders evidence seized pursuant to a challenged warrant admissible provided the police act with objective and reasonable good faith, even if the judicial officer erred in finding probable cause. *Leon, supra,* at 922, 104 S.Ct. 3405. In *Leon,* the Supreme Court held that the good faith exception applies provided the officer's reliance on the judicial officer's probable cause determination and on the technical sufficiency of the issued warrant is objectively reasonable. *Id.* However, suppression remains an appropriate remedy where the judicial officer was misled by relying on information which the affiant knew was false or would have known but for his reckless disregard for the truth, or where the issuing judicial officer wholly abandoned his judicial role. *Id.* at 923. In the instant case, based on this court's review of the search warrant application, the court finds that the investigating agents who executed the search warrant had a good faith basis to believe that the search warrant was lawfully issued based on a finding of probable cause.

In particular, the record establishes that Agent Forrest was sworn and related intricate details about a complex child pornography distribution organization through an Internet service provider. The record also establishes that much of Agent Forrest's information was gathered from other FBI agents investigating the distribution of child pornography, and was corroborated by the subpoenaed business records of Paycom, AOL and Verizon, as well as by the United States Postal Inspector for West Seneca and a recent telephone directory, sources which are not generally subject to challenge absent some indication of fraud not presented on this record.

Upon this record, there is no basis to find that Agent Forrest, as a reasonable law enforcement officer, lacked a good faith belief in the existence of probable cause or that the court failed to act lawfully in considering and issuing the warrant. To sustain Defendant's argument would require the court infer that Agent Forrester fabricated the entire application. On the record presented to the court, there is no basis whatsoever for such a finding. Moreover, the issuing judicial officer is entitled to rely on the truthfulness of warrant applications made under oath in evaluating the likely existence of an undisclosed informant. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("There is a presumption of validity with respect to the affidavit supporting the search warrant"). Thus, the prerequisites for application of the *Leon* good faith exception are present, and Defendant's motion also should be DENIED as to this issue.

### *CONCLUSION*

Based on the foregoing, Defendant's motion to suppress evidence seized pursuant to the search warrant issued for his residence should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.