# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| STATE OF DELAWARE, | ) | |
|---|---|---|
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAPICE JOHNSON, | ) | ID NO. 2209003269A |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Date Submitted: June 9, 2023
Date Decided: July 7, 2023

*Upon the Defendant's Motion to Suppress.* ***DENIED.***

## ORDER

Isaac Rank, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Sean A. Motoyoshi, Esquire, Assistant Public Defender, Wilmington, Delaware, Attorney for Defendant Capice Johnson.

**SCOTT, J**

1

**INTRODUCTION**

Defendant Capice Johnson ("Mr. Johnson") is charged in this Court with one count of Possession of a Firearm by Person Prohibited ("PFBPP"), one count of Possession of Oxycodone (Tier 2), one count of Possession of Cocaine (misdemeanor), and one count of Possession of MDMA (misdemeanor). Mr. Johnson moved to suppress all evidence seized as a result of an alleged unlawful execution of search warrants, for lack of probable cause and insufficient nexus between the items sought and place searched, for a residence on Janvier Court and black Jeep Cherokee. For the following reasons, the Motion to Suppress is **DENIED.**

**FACTS FROM AFFIDAVITS**

On August 9, 2022, a shooting occurred on East Cole Blvd. in Middletown, Delaware. The shooter was riding an orange dirt bike. After firing multiple gunshots and injuring a female pedestrian standing outside of her residence, the biker fled the scene. The female victim was driven to the hospital by two witnesses. The two witnesses were later interviewed and described the shooting as perpetrated by a black male on an orange dirt bike. Neither witness provided the name of the shooter at the time of the interview. A surveillance video was recovered and upon review, by Detective Joshua Stafford ("Lead Detective") of the Middletown Police Department, revealed two individuals arriving to the residence where the shooting occurred on

dirt bikes. One dirt bike was blue and the other orange. The shooter, who rode on the orange dirt bike, had his face covered by a black balaclava mask and wore multi pattern camouflage shorts, black socks, dark colored sneakers, a white t shirt and a bag or satchel strapped across his body. The shooter also had visible tattoos on each arm. The dirt bike had letters KTM on the side. On the surveillance footage, the shooter is seen firing multiple rounds at a group of people in front of the targeted residence at 7:02 P.M. before fleeing the scene.

Lead Detective was contacted by two past proven reliable confidential sources that informed him that the shooter was Capice Johnson. The confidential sources both correctly identified what Mr. Johnson was wearing at the time of the shooting. Further, the sources informed Lead Detective of the apparent motive, which was an alleged disagreement between Jasmine Morgan, Mr. Johnson's child's mother, and the victim who was shot. Both confidential sources had previously observed Defendant on the same orange dirt bike and wearing the same mask on previous occasions. An additional witness also contacted Lead Detective and advised him that Mr. Johnson was the shooter and he operates a black SUV with temporary tags.

Detective Starrett, another detective for the Middletown Police Department, provided additional information to Lead Detective. Detective Starrett advised he had observed Mr. Johnson at the apartment complex of the Residence on several occasions and had also observed him operating a black Jeep Cherokee with Delaware

3

temporary tags. Detective Starrett was aware Mr. Johnson lived at the Residence with the mother of one of his children, Ashley Skinner. Additionally, Detective Starrett shared Instagram posts to Lead Detective, depicting Mr. Johnson operating a bike identical to the one seen used in the shooting and photos that showed Mr. Johnson wearing similar pants to those observed on the surveillance footage and showing his tattoos which were similar in location, shape and size to those seen on the shooter on the surveillance recording.

Lead Detective contacted the apartment manager who confirmed Ashley Skinner lived at the Residence with Mr. Johnson's child. Lead Detective contacted an employee of the company who confirmed Mr. Johnson had been seen at the Residence on multiple occasions, and that he uses an orange and black dirt bike. The employee informed Lead Detective that Mr. Johnson resided at the Residence and had been doing so for several months.

Lead Detective reviewed surveillance of the Residence from the date of the shooting. On the footage, at about noon on August 9, 2022, Lead Detective observed an individual leaving the Residence wearing clothing consistent with what the shooter wore in the surveillance footage of the shooting. Mr. Johnson was also seen operating the Vehicle after the shooting.

4

Upon beginning surveillance on the property on August 24, a Middletown Police officer observed Mr. Johnson standing directly in front of the Residence at approximately 7:05 P.M.

## APPLICATION FOR WARRANTS

On August 30, 2022, Lead Detective presented search warrant applications and affidavits, which included all of the above referenced information, at JP Court #2 for the searches of 967 Janvier Court in Middletown ("Residence") and a black 2015 Jeep Cherokee registration XQ274469. Those search warrant applications were signed on the day of presentation and executed on September 7, 2022. The search warrant applications identify the following items to be searched for and seized: Firearms, ammunition, firearm accessories to include magazines, holsters; receipts for firearms and/or firearm accessories; electronic communication devices, any device capable of accessing the internet and sending/receiving multimedia messages, multi-pattern shorts, a black mask/balaclava, a bag/satchel with a crossbody strap, dark colored sneakers, an orange motor bike (commonly referred to as a dirt bike), a blue and white motor bike, photographs of the motor/dirt bikes. Receipts and or accessories for the motor/dirt bike. During the execution of the search, Mr. Johnson was arrested, and drugs and firearms were discovered and seized.

## DISCUSSION

*No Standing to Challenge Search of Vehicle*

Mr. Johnson does not own, nor did he exercise control over the vehicle at the time of the search. A person only has standing to challenge evidence seized as a result of a violation of one's own constitutional rights.[1] The petitioner must demonstrate his own "legitimate expectation of privacy in the invaded place" before he may challenge the validity of a search or seizure.[2] For purposes of protection under the Fourth Amendment, automobiles are treated differently than houses.[3] A passenger who does not own or exercise control over a vehicle does not possess a reasonable expectation of privacy in the vehicle in which he is traveling.[4] Therefore, a mere passenger in a vehicle does not have standing to challenge a search.[5]

Because Mr. Johnson does not claim any possessory or proprietary interest in the car that was searched, Mr. Johnson lacks standing to attack the sufficiency of the search. The prevailing rule of standing was enunciated by the United States Supreme Court in *Rakas v. Illinois*.[6] The Court in *Rakas* stated that:

---

[1] *Mills v. State*, 2006 WL 1027202 (Del.Super. Apr. 17, 2006).
[2] *Wilson v. State*, 812 A.2d 225 (Del.2002) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).
[3] *Rakas*, 439 U.S. 128.
[4] See *Mills*, 2006 WL 1027202; see *Rakas*, 439 U.S. 128.
[5] *Id.*
[6] 439 U.S. 128 (1978).

Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.[7]

The Supreme Court held that a proponent of a motion to suppress has standing to contest the legality of a search and seizure only if he can assert either a property or a possessory interest in the areas searched on the property seized and if he can show a legitimate expectation of privacy in the areas searched.[8]

Mr. Johnson asserts neither a possessory nor a property interest in the automobile as Mr. Johnson does not own the vehicle nor was he exercising any control over it at the time of the search. Mr. Johnson has also failed to show that they had a legitimate expectation of privacy in the areas searched. Therefore, Mr. Johnson lacks standing to contest the search and seizure of the evidence in question on Fourth Amendment grounds.

---

[7] *Id.* at 133-4 (internal citations omitted).
[8] *Id.* at 148. See also *Rawlings v. Kentucky*, 448 U.S. 98 (1980); *Brown v. United States*, 411 U.S. 223 (1973).

*Nexus Present and Probable Cause Exists for Issuance of Residence Search Warrant*

Defendant argues lack of probable cause and there is no nexus between the items sought and the complaint being investigated. "On a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful."[9] Moreover, "a search warrant may be issued only upon the showing of probable cause."[10] This Court "must employ a 'four corners' test to determine whether an application for a warrant demonstrates probable cause."[11] "Under this test, sufficient facts must appear on the face of the affidavit so that a reviewing court can glean from that document alone the factual basis for a determination that probable cause exists."[12] "An affidavit of probable cause must contain the facts sufficient to establish probable cause within the four corners of the affidavit."[13] Additionally, "[p]robable cause exists in the affidavit when there is 'a logical nexus between the items sought and the place to be searched'."[14] "For a logical nexus to be present, the affidavit must

---

[9] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).
[10] *Id.*
[11] *Id.* at 876 (citing *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975)).
[12] *Id.*
[13] *State v. Monroe*, 2015 WL 721441, at *6 (Del. Super. Feb. 18, 2015) (citing *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000)).
[14] *State v. Monroe*, 2015 WL 721441, at *6.

'set forth facts that would permit an impartial judicial officer to reasonably conclude that the items sought would be found in those locations'."[15]

This Court finds there was a nexus between the apartment to be searched and the evidence sought. There is a logical connection that evidence, such as the clothes, weapon and dirt bike used during the commission of the crime, linking Mr. Johnson to the shooting would be present at the place in which he resides.

Looking at the four corners of the document, probable cause exists for the issuance of the search warrant based on a multitude of findings sworn to by Lead Detective. Probable cause exists because two past proven reliable confidential sources that informed him that the shooter was Mr. Johnson, identified what Mr. Johnson was wearing at the time of the shooting and had previously observed Defendant on the same orange dirt bike and wearing the same mask on previous occasions, Detective Starrett advised that Mr. Johnson resided at the Residence, Instagram posts depicting Mr. Johnson operating a bike similar to the one seen used in the shooting and photos that showed Mr. Johnson wearing similar pants to those observed on the surveillance footage and showing his tattoos which were similar in location, shape and size to those seen on the shooter on the surveillance recording. Additionally, there was confirmation from the apartment complex employee that Mr.

---

[15] *State v. Friend*, 2016 WL 7232170, at *7 (Del. Super. Dec. 13, 2016).

Johnson had been seen at the Residence on multiple occasions using an orange and black dirt bike and that Mr. Johnson resided at the Residence. Surveillance of the Residence from the date of the shooting which showed an individual leaving the Residence wearing clothing consistent with what the shooter wore in the surveillance footage of the shooting. Taking all the above information into consideration, probable cause exists that Mr. Johnson was the shooter from August 9th and the property sought to be seized would be found in the place he resided.

***The information in the affidavit was not stale***

Mr. Johnson brought up the point of staleness. He argued some of the information provided in the search warrant was too old and should not have been considered for the basis of probable cause, such as the Instagram posts of Mr. Johnson on a similar bike. With respect to staleness, it is clear that "[p]robable cause must be based on current information, not conjecture, for stale information will not support a finding of probable cause."[16] In other words, "probable cause must exist to believe that the specified items are presently on the premises...."[17] While

---

[16] *Pierson v. State*, 338 A.2d 571, 573 (Del.1975).

[17] *Id.* (emphasis in original). See also *United States v. Grubbs*, 547 U.S. 90, ——, 126 S.Ct. 1494, 1499 n. 2, 164 L.Ed.2d 195 (2006) (parenthetical) (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2nd Cir.1993)) ("[T]he facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past."); *United States v. Hython*, 443 F.3d 480 (6th Cir.2006).

statements of dates and times are instructive, they are not dispositive to ascertaining the existence of probable cause.[18] Instead, magistrates and courts must consider other factors including the kind of property for which authority to search is sought, and whether the evidence sought is highly incriminating or consumable and thus less or more likely to remain in one location.[19] The validity of probable cause cannot be quantified "by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit."[20] Rather, in determining whether information has become stale due to an impermissible delay in securing a warrant, courts must examine all the relevant facts and circumstances in a "practical and flexible manner."[21]

Looking at all the relevant facts and circumstances, there was no impermissible delay in securing a warrant. The information Mr. Johnson complains about being stale were further confirmed closer to the time of the issuance of the search warrant. As such, there is no staleness associated with the issuance of the search warrant.

---

[18] *Jensen v. State*, 482 A.2d 105, 111 (Del.1984) (citations omitted).
[19] *Id.* at 112. See *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir.2006).
[20] *Jensen*, 482 A.2d at 112 (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972)).
[21] *Smith*, 887 A.2d at 475 (quoting *Jensen*, 482 A.2d at 112). See also *United States v. Washington*, 139 Fed.Appx. 479, 482 (4th Cir.2005).

## CONCLUSION

Based on the totality of the circumstances, probable cause existed for the issuance of the Residence search warrant. For the aforementioned reasons, Defendant's Motion to Suppress is hereby **DENIED.**

**/s/ Calvin L. Scott**

**Judge Calvin L. Scott, Jr.**